UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Frank Green, Jr., #116977, | ) C/A No. 5:15-cv-00488-JFA-KDW |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) REPORT AND RECOMMENDATION |
| vs. | ) |
| | ) |
| Warden Stevenson, | ) |
| | ) |
| Respondent. | ) |
| | ) |

Frank Green, Jr. ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28

U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and

Recommendation on Respondent's Motion for Summary Judgment and Return. ECF Nos. 16, 17.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of

the summary judgment and dismissal procedures and the possible consequences if he failed to

respond adequately to Respondent's Motion. ECF No. 18. Petitioner filed a Response in

opposition to Respondent's Motion. ECF No. 20. Respondent did not file a reply to Petitioner's

Response. Having carefully considered the parties' submissions and the record in this case, the

undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.    Procedural History

Petitioner is currently incarcerated at Broad River Correctional Institution, part of the

South Carolina Department of Corrections prison system. Pet. 1, ECF No. 1. On June 17, 2010,

2008, an Aiken County Grand Jury indicted Petitioner on one count of armed robbery, App. 127,

and one count of possession of a weapon during a violent crime. *See* http://publicindex.sccourts.org/Aiken/PublicIndex/PISearch.aspx (last consulted December 8, 2015).[1] On June 29, 2010, after a jury was seated for trial, Petitioner pleaded guilty to the armed robbery charge. App. 48. The weapons charge was disposed of through *nolle prosequi*. App. 37. Attorney Kelley P. Brown ("plea counsel") represented Petitioner and Assistant Solicitors David W. Miller and Stephen P. Kodman represented the State of South Carolina during jury selection and the plea hearing. App. 1. Judge Doyet A. Early, III ("the plea court") accepted Petitioner's plea, App. 48, and imposed a twenty-year sentence on the armed robbery conviction and a concurrent four-year sentence for a probation violation caused by Petitioner's guilty plea. App. 58-60.

On the day that Petitioner's case was called for trial (June 28, 2010), the State moved to amend the indictment. App. 3-8. The original indictment stated that Petitioner *attempted* to take property from the victims and it did not include the names of both victims. App. 127. The State moved to add the name of the second victim and the plea court granted that amendment. App. 5. The State then moved to strike the "attempt to" from the wording of the indictment, arguing that there would be no prejudice to Petitioner because the indictment was captioned "INDICTMENT FOR ARMED ROBBERY." App. 56. The State also produced testimony from the law enforcement officer who presented the facts of the matter to the grand jury. He testified that he based the entirety of his presentation to the grand jury upon Petitioner's effectuating the robbery and actually taking monies from the victims at the cash register. App. 9-10. Plea counsel

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF No. 17-1.

objected to the State's motion, arguing that striking the "attempt to" language would substantially alter the nature of the indictment; however, she also stated that she prepared for an armed robbery case based upon the information contained on the indictment. App. 7-8. The plea court ruled that the "attempt to" language could be stricken as a scrivener's error because Petitioner had sufficient notice that he was charged with armed robbery. App. 11. After the plea court denied a motion for continuance made by plea counsel, App. 12-14, jury selection took place. App. 15-37. Petitioner then stated that he had decided to plead guilty with a sentence "cap of 25." App. 37. However, after explaining sentencing ranges and classifications and the waiver of constitutional rights to trial resulting from a guilty plea to Petitioner, App. 39-42, the plea court rejected Petitioner's offer to plead guilty because Petitioner told the court that he really was not guilty and that he did not think he had enough time to prepare a defense. App. 42-44. Petitioner renewed his offer to plead the next day, and he then told the plea court that he committed the crime with which he was charged in the way the State said he did it and that he talked to plea counsel and that "she had enough time." App. 45-46. Petitioner responded to the plea court's additional questions by stating that he was not being forced to enter the plea and that he had not been promised anything to encourage the plea. He also responded affirmatively when the plea court asked him if he understood the rights he was waiving by pleading guilty and reconfirmed that he "robbed the clerks . . .by use of [a] gun." App. 47. The plea court then noted that Petitioner had "viewed a video" either overnight or the morning of the plea, that Petitioner's decision to plead guilty was voluntary, that he told the court that he was "completely satisfied" with plea counsel's services, and that he could appeal within ten days if he disagreed with the guilty plea proceedings. The plea court asked Petitioner if he understood all of those matters and

3

Petitioner responded "[y]es, sir." App. 48.

Petitioner did not pursue a timely direct appeal from the conviction. Petitioner filed a post-conviction relief ("PCR") application on June 13, 2011, App. 62-73; *Green v. State*, No. 2011-CP-02-01294, raising the following points:

> a. Violation of Sixth Amendment Right to Competent Legal Counsel; Fifth and Fourth Amendment Right to Legal Due Process and Equal Protections.
>
> . . . .
>
> I. Legal Counsel for the defendant proceeded to allow her client to plea to a crime in Aiken County General Sessions Court on June 29, 2010 without having provided her client with all evidence, material, and critical documentation from the Aiken County Solicitor's Office that would have mitigated punishment and drastically changed the outcome.
>
> II. Plea Counsel for the defendant also grossly violated her client's Sixth Amendment Rights by allowing the Court to deny her client's repeated requests for change of legal counsel.

App. 64, 69. The State filed its return to the PCR application on October 20, 2011. App. 75-79. An evidentiary hearing was held January 24, 2012 in Aiken, South Carolina before the Honorable Edgar W. Dickson ("the PCR court"). Attorney Morris Rudnick represented Petitioner and Assistant Attorney General Mary S. Williams represented the State at the hearing. App. 80. Petitioner and plea counsel testified at the hearing. App. 83-100, 102-18.

Petitioner testified at the PCR hearing that he was admitted to the prison system the day after he pleaded guilty and that he "had a change of heart" on that day and filed a notice of appeal to seek a direct appeal. App. 85. He testified that he thought the notice was sent in before his ten-day appeal period ran, but that it was not clocked in until after the time ran. Petitioner also testified that plea counsel told him that she would file an appeal for him and that he asked

her to do so. App. 86-87. Petitioner also testified that he filed a notice of appeal after he was admitted to prison because he did not think he had been provided with the evidence that the State was planning to use against him, particularly the evidence regarding the identity of the person who was arrested for the crime that he was charged with committing. App. 94-95. He said that he thought the evidence might give him an alibi defense, but that plea counsel told him that the different name on the arrest report was not going to make a difference in his case. App. 95. Petitioner also provided the names of two persons who he said could testify that he was inside a club at the time the crime occurred, but acknowledged that the investigator had not found them at the location that he provided for them. App. 96. Petitioner stated that the notice of appeal that he filed from prison was stamped "July 12th" by the prison mailroom. App. 97. He testified that met with plea counsel three times before he entered his plea and that he never met with the lawyer who had originally been appointed for him. App. 87-88. Petitioner stated that he believed he had witnesses who could provide him with an alibi and that he supplied the investigator working his case with names of people who could testify that he was not at the scene of the crime. He stated that he was "under the impression" that the investigator only went once to the location where Petitioner said his witnesses could be found and, when the business was found to be closed, did not try again because "court was so close." App. 88-89. Petitioner testified that even though a jury had been selected for his trial, plea counsel told him that "the best thing" for him was to plead guilty because he did not have any witnesses after the plea court denied her motion for continuance. App. 89. He stated that he decided to plead guilty shortly after jury selection because the plea court would not allow him additional time to hire another lawyer, which he stated he wanted to do because plea counsel was telling him she knew he was guilty

and that "it would be like a waste of time to try to do anything else." App. 90. Petitioner also testified that he was "supposed to have been pleading to attempted armed robbery" and not to armed robbery and he expressed confusion about a housebreaking charge that his PCR counsel mentioned. App. 91. Petitioner testified that he attempted to enter a plea on the same day that the plea court denied his requested continuance, but the court would not accept it that day so he went back to the jail for the night. He stated that the next morning he "voluntarily" told plea counsel that he wanted to plead guilty. He said that plea counsel did not ask him to change his plea from not guilty to guilty. App. 92. On cross examination, Petitioner testified that it was his own decision to plead guilty and admitted that he told the plea court that he was guilty of the charged crime. App. 98. He stated that what he told the plea court was not the truth, but he thought that was the only way he could get the court to accept the plea. He said that no one forced him to plead guilty, but he said that plea counsel told him that he was charged with attempted armed robbery before the State "changed it to . . . armed robbery." App. 99. Petitioner further testified that he understood that he was pleading guilty to armed robbery at the time the plea was entered, and that plea counsel told him that the victim of the crime with which he was charged "was going to testify against [him]." App. 100. At the close of Petitioner's testimony, the PCR court specifically noted that the witnesses Petitioner testified about were not at the PCR hearing and would not be testifying. App. 101.

Plea counsel testified at the PCR hearing that she did not object to the State's motion to amend the indictment because she did not believe that adding the second victim's name to the indictment prejudiced Petitioner. She also testified that she understood the plea court's decision to allow the "attempt to" language to be stricken from the indictment because it was a scrivener's

error and she and Petitioner had always discussed an armed robbery charge. App. 105. She stated that Petitioner "was insistent that he wanted to plead guilty" and that "it was completely his choice." App. 106. Plea counsel also testified that she was aware of her investigator meeting with Petitioner, gathering names of potential witnesses, and of his numerous attempts to physically locate them. App. 107. Plea counsel stated that the investigator interviewed Petitioner's co-defendant and that he went to the location where Petitioner told him there would be witnesses, but, although he "made several attempts," he could not locate them. Plea counsel also testified that the investigator requested any in-car videos that may have been involved in the traffic stop that resulted in Petitioner's arrest and issued subpoenas to receive the CAD report, the 9-1-1 call, all radio transmissions, any of the radio chatter from that time. App. 107. Plea counsel also testified that she met with Petitioner at least four times prior to the plea, discussed all of the evidence with him and reviewed additional tapes that had made available the morning the case was called for trial. App. 102-05, 107-08. She stated that she did not recall Petitioner telling her that he wanted to file an appeal. App. 108. On cross examination, plea counsel testified that Petitioner's concerns about a different person being named on the incident report were the result of Petitioner's co-defendant giving the police an incorrect name for Petitioner, who was the person that they had in custody and who the victims picked out from a photo lineup. She said that all evidence pointed to Petitioner as the perpetrator and that nothing pointed to any third-person involvement. App. 112. Plea counsel testified that there were problems locating Petitioner's potential witnesses because of the physical descriptions and partial names that Petitioner gave the investigator. App. 114-15. Counsel stated that she did not ask Petitioner if he wanted to file an appeal because she "did not see any defect in the proceedings . . . [or] any basis

7

for the appeal." Counsel testified that she sent Petitioner a letter after she received a copy of the notice of appeal that he filed because she did not receive the notice until after the time for filing an appeal had expired. App. 118.

The PCR court issued an order dated August 13, 2012, finding that Petitioner did not prove that plea counsel was ineffective and dismissing PCR application with prejudice. The PCR court did grant Petitioner a belated directed appeal. App. 121-25. The PCR court's order contained the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (1985).

In a post-conviction relief action, the Applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, 286 S.C. 441, 334 S.E.2d 813 (1985). The Applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d

8

at 625 (citing <u>Strickland</u>). Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Cherry</u>, 300 S.C. at 117-18, 386 S.E.2d at 625. With respect to guilty plea counsel, the Applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 US. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

After careful review based on the standard discussed above, the Applicant has failed to carry his burden in this action with respect to his allegations of ineffective assistance of counsel prior to and during his entry of a guilty plea. Therefore, this Court finds that the application must be denied and dismissed in regards to Applicant's allegation of ineffective assistance of counsel prior to and during Applicant's guilty plea.

However, this Court agrees that the allegation that the Applicant was denied a direct appeal is meritorious. Trial counsel must ensure that a criminal defendant is made fully aware of his appeal rights. *See* <u>White v. State,</u> 263 S.C. 1 10, 208 S.E.2d 35 (1974). In the absence of an intelligent waiver by the defendant, counsel must either initiate an appeal or comply with the procedure required by <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396 (1967). <u>White</u>, <u>Id</u>. Where the post-conviction relief judge determines that the applicant did not freely and voluntarily waive his or her appellate rights, the applicant may petition the South Carolina Supreme Court for review of direct appeal issues pursuant to <u>White v. State</u>. See Rule 227(g)(1), SCACR; <u>Davis v. State</u>, 288 S.C. 290, 342 S.E.2d 60 (1986).

The Court affirmatively finds that the Applicant did not knowingly and voluntarily waive his right to a direct appeal. The Court concludes that the Applicant is entitled to a belated review of his conviction. A petition for belated review pursuant to <u>White v. State</u> can remedy the Applicant's lack of a direct appeal.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application in regards to his allegations of ineffective assistance of counsel prior to and during his guilty plea. Therefore, this application for post-conviction relief must be denied and dismissed with prejudice in regards to this allegation. However, this Court finds that the grant of a belated direct appeal is proper.

App. 122-25 (footnote omitted). A petition for writ of certiorari seeking review of the ineffective assistance of counsel portion of this PCR court's final judgment was submitted on Petitioner's behalf to the South Carolina Supreme Court on or about April 29, 2013. ECF No. 17-3; *Rogers v. State*, No. 2012-212826 (S.C.). Deputy Chief Appellate Defender Wanda H. Carter raised the following issues for the court's review quoted verbatim:

> I. The PCR judge ruled properly in granting petitioner's request for a belated direct appeal because the record established that the petitioner did not voluntarily and intelligently waive his right to a direct appeal in the case.
>
> II. Trial counsel erred in allowing the petitioner to plead guilty as charged rather than investigate into the availability of alibi witnesses who would have testified on behalf of the defense in the event of a trial in the case.

On the same day, Deputy Chief Appellate Defendant Carter also filed an *Anders* brief "pursuant to White v. State" on Petitioner's behalf.[2] The issue raised in that brief was: "The lower court erred in accepting the appellant's guilty plea without first determining whether a factual basis existed in support of the plea." ECF No. 17-4 at 4.[3] Assistant Attorney General

---

[2] *See Anders v. California*, 386 U.S. 738 (1967) (appointed appellate counsel may move to withdraw from representation after certifying a belief that the direct appeal that counsel filed is without merit).

[3] It appears from Petitioner's Response to the Motion for Summary Judgment now under review that he filed a supplemental pro se brief in response to the *Anders* brief. ECF No. 20-1. That brief is attached to Petitioner's Response, but it is not contained in the official record provided by Respondent. Nevertheless, it can be seen from the appellate court's decision that it did not address the merits of the issues raised in Petitioner's brief because they related to the PCR claims of ineffective assistance of counsel, which were the subject matter of the Petition for Certiorari filed by Petitioner's PCR appellate counsel and were not properly raised in a direct appeal. ECF No. 17-7. Petitioner had no right to submit pro se supplemental arguments relating to ineffective assistance of counsel because his PCR appellate counsel did not submit her Petition under *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), the PCR-related equivalent of an *Anders* brief. *See Miller v. State*, 697 S.E.2d 527 (S.C. 2010) (no right to "hybrid representation" that is partially *pro se* and partially by counsel in South Carolina; substantive documents, except

Daniel Gourley filed a Return to the Petition for Writ of Certiorari on July 29, 2013, taking no position on the propriety of the PCR court's grant of belated appeal, but contending that it was correct in finding no ineffective assistance of counsel. ECF No. 17-5. The case was transferred to the South Carolina Court of Appeals for disposition. ECF No. 17-6. On January 14, 2014, that court dismissed Petitioner's direct appeal, finding that the issue raised was not preserved for review by contemporaneous objection and that Petitioner's arguments relating to ineffective assistance of counsel were not proper in a direct appeal. In the same unpublished opinion, the appellate court also dismissed the Petition for Writ of Certiorari that sought review of the PCR judgment upon a holding that the evidence supported the PCR court's decision that plea counsel was not ineffective. ECF No. 17-7; *Green v. South Carolina*, No. 2015-UP-019 (S.C. Ct. App. Jan. 14, 2015). The remittitur was issued on February 2, 2015 and filed in Aiken County on February 4, 2015. ECF Nos. 17-8, 17-9.

    II.     Discussion

        A.     Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

**Ground One**: Ineffective Assistance of Counsel

    . . . .

---

motions to relieve counsel, filed *pro se* by persons represented by counsel should not be accepted unless submitted by counsel); *State v. Stuckey*, 333 S.C. 56, 508 S.E.2d 564 (1998) (recognizing a limited exception to unavailability of "hybrid representation" only where appellate counsel files an *Anders* brief or *Johnson* petition).

Was charge [sic] with the wrong indictment armed robbery. Indictment was attempt robbery. Did not look for witness did not bring any evidence. Allowed me to plea to a charge I was never indicted for! Failed to do any investigations or attempt to contact my witness.

. . . .

**Ground Two**: Denied Direct Appeal

. . . .

Trial Counsel failed to file for a Direct Appeal or to advise me of my rights to a Direct Appeal as required by law.

**. . . .**

**Ground Three**: Court erred in allowing Petitioner to Plea to a Charge he was never indicted for.

. . . .

Aiken County Grand Jury indicted Petitioner for attempted robbery at the Plea Hearing Petitioner Pled guilty to Armed Robbery Although Petitioner objected to the Court at the time of the Sentencing (on the record).

ECF No. 1 at 5-8.

B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or

13

involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id*.; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

14

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

15

b.     Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that

16

prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 562 U.S. at 101.

## 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –

   (A) the applicant has exhausted the remedies available in the courts of the State; or

   (B)(i) there is an absence of available State corrective process; or

   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of

his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

### b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue

19

before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome Respondent's contention, it is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

### c.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate

21

the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

3.    Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id*.

III.    Analysis

    A.    Procedurally Barred Claims

        1.    Ground One:  Ineffective Assistance of Counsel for Allowing Petitioner to Plead Guilty to Armed Robbery Rather Than Attempted Armed Robbery

            a.    The Parties' Positions

Respondent contends that Petitioner's Ground One is procedurally defaulted to the extent that it asserts ineffective assistance of counsel based on Petitioner's pleading guilty to armed robbery because that basis for such claim was "not raised in any state court proceeding . . . ." ECF No. 17 at 10. Petitioner responds that he objects to Respondent's argument "pursuant to AEDPA 28 U.S.C. 2254(e)(2); and based on the holding outlined in Williams vs. Taylor 529 US 362; and the holding articulated in US vs. Cotton 122 S. Ct 1724; which was adopted in State v.

Gentry 610 SE2d 494." ECF No. 20 at 2. Petitioner asserts that he was indicted for attempted armed robbery, not armed robbery and that the plea court acted without jurisdiction in accepting the guilty plea to armed robbery. *Id*. at 2-4.

### b.     Discussion

Petitioner does not make any argument in his Response to the Motion for Summary Judgment now before the court that references "procedural default" or "procedural bypass" despite Respondent's clear contention that this court should not address the merits of that portion of Ground One that asserts ineffective assistance of counsel based on plea counsel's failure to prevent Petitioner from pleading guilty to armed robbery. Instead, he appears to argue only the merits of his current claim that the guilty plea was accepted in absence of subject-matter jurisdiction because the indictment allegedly charged him with attempted armed robbery. The undersigned has reviewed the legal opinions cited by Petitioner as support for his merits argument and none of them includes any reference to the habeas-corpus doctrine of procedural default or bypass. Instead, two of the opinions address issues regarding the sufficiency of indictments for armed robbery or other charges, *see State v. Gentry*, 610 S.E. 2d 494, 500 (S.C. 2005) (finding that *United States v. Cotton*, 535 U.S. 625 (2002), also cited by Petitioner, held that a defective indictment does not deprive a court of jurisdiction, and the other one addresses the standards by which federal courts may review claims of ineffective assistance of counsel. *Williams v. Taylor*, 529 U.S. 362, 405-16 (2000). The undersigned's independent review of the record in this case discloses that Respondent's contention that the issue of whether or not plea counsel was ineffective for allowing Petitioner to plead guilty to armed robbery because he was allegedly charged with attempted armed robbery was not raised before the PCR court through

Petitioner's PCR application. App. 69-73. Although there was PCR testimony from both Petitioner and plea counsel, App. 91, 99, 105, the PCR court's broadly written final judgment did not contain any findings or conclusions referencing the issue of whether or not counsel should have allowed Petitioner to plead guilty to armed robbery instead of attempted armed robbery. There is also no mention of any of the testimony relating to the issue regarding the plea court's allowing the State to amend the indictment. App. 121-25. Additionally, Petitioner's PCR counsel did not file a post-judgment motion pursuant to Rule 59(e) of the South Carolina Rules of Criminal Procedure to alert the PCR court to any "missed issues." *See* John H. Blume & Emily C. Paavola, *A Reintroduction: Survival Skills for Post-Conviction Practice in South Carolina*, 4 Charleston L. Rev. 223, 270 (2010) ("a Rule 59(e) motion may also be used when the order contains an erroneous finding of fact, a misapplication of law, or if there has been intervening authority relevant to an issue in the case"); *cf. Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007) (holding that if a PCR court fails to address a particular claim, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure to preserve the issue for review). Furthermore, this topic was not raised by Petitioner's PCR appellate counsel in the Petition for Writ of Certiorari that she submitted on Petitioner's behalf to obtain review of the PCR final judgment. ECF No. 17-3. Thus, the undersigned agrees with Respondent that Petitioner procedurally bypassed any opportunity to assert that plea counsel was ineffective for allowing him to plead guilty to armed robbery rather than attempted armed robbery, and his failure to assert any cause for or prejudice from such bypass or otherwise address Respondent's unopposed contentions of procedural default/bypass prevent this court from addressing the merits of that portion of Petitioner's Ground One. *See*

24

*Petrucelli v. Dep't of Justice*, No. 11-1780 (RBW), 2014 WL 2919285, at *7 (D.D.C. June 27, 2014 (prisoner case; citing *Maydak v. DOJ*, 579 F. Supp. 2d 105, 107) (D.D.C. 2008); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). Accordingly, Respondent's Motion for Summary Judgment should be granted as to that portion of Petitioner's Ground One asserting ineffective assistance of plea counsel for failing to prevent the plea to armed robbery.

2.    Ground Three: Trial Court erred in allowing Petitioner to Plea to a Charge he was never indicted for.

a.    The Parties' Positions

As he stated with regard to part of Ground One, Respondent contends that this Ground is procedurally barred because it was "not raised in any state court proceeding . . . ." ECF No. 17 at 10. Petitioner's only response to this contention is the same one that he made with respect to Respondent's position on Ground One: he asserts that the plea court acted without subject-matter jurisdiction when it accepted his guilty plea to armed robbery. ECF No. 20 at 2-4.

b.    Discussion

As discussed above in connection with part of Petitioner's Ground One, because the issue of the propriety of the plea court's acceptance of the guilty plea to armed robbery was not addressed by any state court, and because Petitioner does not address the issue of procedural default/bypass of this Ground raised by Respondent, this court should not address the merits of his Ground Three. The issue raised in that Ground is procedurally bypassed, and Petitioner's failure to provide any facts or argument relating to the cause and prejudice exception to

application of that doctrine amounts to a concession to Respondent's Motion to Summary Judgment regarding Ground Three. Accordingly, the undersigned finds that Respondent's Motion for Summary Judgment be granted as to Petitioner's Ground Three.

#### B.     Merits Analysis: Grounds One, in part, and Two

##### 1.     Ground One: Ineffective Assistance of Counsel for Failing to Investigate and Contact Petitioner's "Alibi" Witnesses

###### a.     The Parties' Positions

Respondent contends that the PCR court's decision that Petitioner failed to prove that plea counsel was ineffective is supported by both Petitioner's and plea counsel's PCR testimony. ECF No. 17 at 14. Respondent asserts that the testimony showed that plea counsel's investigator attempted to follow Petitioner's information and find the witnesses that he provided and that plea counsel met with Petitioner "at least four times prior to the plea" and discussed the State's evidence with Petitioner. *Id.* at 15. Respondent also contends that Petitioner's own statements to the plea court showed that he was satisfied with plea counsel's services. *Id.* at 16. Petitioner does not respond to Respondent's contentions and does not include any discussion or argument about the sufficiency of plea counsel's investigation or trial preparation in his Response to the Motion for Summary Judgment. However, in his Petition he states that plea counsel was ineffective because she "[d]id not look for witness [and] did not bring any evidence . . . [f]ailed to do any investigations or attempt to contact my witness." ECF No. 1 at 5.

###### b.     Discussion

The PCR court found that Petitioner failed to prove that plea counsel rendered ineffective assistance without any written factual analysis. Other than a brief recitation of applicable law,

the discussion of Petitioner's claim of ineffective assistance of counsel comprises one paragraph

in the final judgment in the PCR action:

> After careful review based on the standard discussed above, the Applicant has
> failed to carry his burden in this action with respect to his allegations of
> ineffective assistance of counsel prior to and during his entry of a guilty plea.
> Therefore, this Court finds that the application must be denied and dismissed in
> regards to Applicant's allegation of ineffective assistance of counsel prior to and
> during Applicant's guilty plea.

App. 123. Applicable law indicates that where allegations of ineffective assistance of counsel are

made, the question becomes "whether counsel's conduct so undermined the proper functioning

of the adversarial process that the trial cannot be relied on as having produced a just result."

*Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court articulated a two-prong test to use

in determining whether counsel was constitutionally ineffective. First, the Petitioner must show

that counsel's performance was deficient. This requires showing that counsel made errors so

serious that counsel's performance was below the objective standard of reasonableness

guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient

performance prejudiced the defense to the extent that the Petitioner was deprived of a fair trial.

The Fourth Circuit Court of Appeals has held that counsel must conduct a basic factual and legal

investigation to determine if a defense is available or can be developed. *Sneed v. Smith,* 670 F.2d

1348, 1352 (4th Cir. 1982). "At the heart of effective representation is the independent duty to

investigate and prepare." *Stevens v. Johnson*, 575 F. Supp. 881, 885 (E.D.N.C. 1983) (citing

*Goodwin v. Balkcom,* 684 F.2d 794, 805 (5th Cir. 1982)). "Informed evaluation of potential

defenses to criminal charges and meaningful discussion with one's client of the realities of his

case are cornerstones of effective assistance of counsel." *Id.* (citing *Gaines v. Hopper,* 575 F.2d

1147, 1149-50 (5th Cir. 1978)). The Fourth Circuit and this court have found that a habeas petitioner does not sustain his burden of proof on an ineffective-assistance claim for failure to locate or call witnesses if the alleged witness is not called to provide testimony to the state court considering the claim. *See, e.g.*, *Bassette v. Thompson*, 915 F.2d 932, 939-41 (4th Cir. 1990); *Joe v. Padula*, No. 9:11-cv-1090-TLW-BM, 2012 WL 2339634, at *7 (Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 2325662 (D.S.C. June 19, 2012); *see also Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998) ("This Court has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."); *Glover v. State*, 458 S.E.2d 539, 540 (S.C. 1995) ("[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses."); *Clark v. State*, 434 S.E.2d 266, 267-68 (S.C. 1993) (pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different); *Underwood v. State*, 425 S.E.2d 20, 22 (S.C. 1992) (prejudice from trial counsel's failure to interview or call witnesses could not be shown where witnesses did not testify at PCR hearing). Furthermore, the Fourth Circuit has held that a PCR court's credibility findings are entitled to deference by this court. *Wilson v. Ozmint*, 352 F.3d 847, 858-858-859 (4th Cir. 2003); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). Additionally, the Supreme Court has ruled that "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Finally, the Fourth Circuit has also held that

district courts should "accord appropriate deference" to the state PCR court's factual findings and that such findings are presumed to be correct and can only be overcome by the presentation of "clear and convincing evidence." *Watkins v. Rubenstein*, 802 F.3d 637, 643 (4th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1) and *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011)).

Despite Petitioner's apparent concession to Respondent's contentions on this Ground by his failure to discuss his ineffective-assistance claims in his Response to the Motion for Summary Judgment, *see Satcher,* 558 F.3d at 735, the undersigned has considered the merits of the Ground as stated in the Petition. Independent review of the record in this case supports Respondent's contentions that the PCR court properly dismissed Petitioner's claims of ineffective assistance of plea counsel in light of the testimony offered at both the plea hearing and the PCR hearing. Because Petitioner's and plea counsel's PCR testimony was in conflict regarding the number of times they met and what was discussed during those meetings, the PCR court impliedly found that plea counsel's testimony at the PCR hearing was more credible than Petitioner's and that plea counsel's testimony at the plea and PCR hearings showed that counsel conducted an adequate investigation into the facts surrounding the charge that Petitioner faced. The implicit determination of the facts is a reasonable one because, as noted by Respondent, the testimony showed that plea counsel and his investigator attempted to locate the persons who Petitioner gave them as witnesses and discussed the State's evidence with Petitioner before his case was called for trial. App. 102-05, 107-08, 114-15. The record also shows that plea counsel tried to obtain a continuance of the proceedings to allow further investigation, but that the plea court denied her motion. App. 11-14. Additionally, Petitioner expressed satisfaction with plea counsel's services at both days of the plea hearing, App. 42, 46, and he does not provide any

argument or facts to this court that would require this court to disregard his statements. Moreover, although the major thrust of Petitioner's complaints against plea counsel is the failure to find the persons whom he named as witnesses, Petitioner acknowledged at both the plea hearing and the PCR hearing that plea counsel's investigator attempted to find them. App. 13-14, 43, 46, 89, 96. Also, Petitioner did not call the alleged alibi witnesses to testify on his behalf at the PCR hearing, and the PCR court specifically noted this missing potential evidence (the alleged witnesses' testimony) at the close of Petitioner's case at the PCR hearing. App. 101 (questioning whether "the alibi witnesses" were "present today to testify"). Thus, giving appropriate deference to the state court's findings and conclusions, the PCR court's determination that Petitioner failed to prove that plea counsel was ineffective was reasonable in light of the facts presented and was not in conflict with established federal law. Moreover, Petitioner's failure to respond to Respondent's contentions in support of his Motion for Summary Judgment amounts to a concession to Respondent's position and a waiver of his Ground One insofar as it is based on a claim on inadequate investigation and/or preparation for trial. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground One.

> ### 2.    Ground Two:  Denial of Direct Appeal

> #### a.    The Parties' Positions

Respondent contends that any harm to Petitioner from the failure of plea counsel to perfect a direct appeal on his behalf was cured by the PCR court's grant of a belated appeal and the subsequent Court of Appeals' consideration of his belated direct appeal. ECF No. 17 at 17-17-18. Respondent further contends Petitioner cannot show that the PCR court's decision to

grant the belated appeal was unreasonable or contrary to established federal law because the record shows that plea counsel's performance was not deficient and, even if it were deficient, Petitioner was not prejudiced because he ultimately received his direct appeal. *Id.* at 18-19. As previously noted, Petitioner's Response to the Motion for Summary Judgment consists entirely of argument relating to his bypassed claims relating to the indictment under which he pleaded guilty to armed robbery. He does not refer to the substance of Ground Two in the Response. In his Petition, he alleges "[t]rial counsel failed to file for a Direct Appeal or to advise me to my rights to a Direct Appeal as required By Law." ECF No. 1 at 7.

b.     Discussion

As noted above, the PCR court granted Petitioner the right to pursue a belated direct appeal and Petitioner's appointed PCR appellate counsel perfected and pursued the appeal process before the South Carolina Court of Appeals. Petitioner was also permitted to file a supplemental pro se brief in connection with that belated appeal so that he could raise any additional issues that he wanted to because his appellate counsel filed an *Anders* brief. The Court of Appeals directly addressed the direct-appeal issues that both Petitioner and his appellate counsel raised in its opinion that also addressed Petitioner's PCR-related claims. ECF Nos. 17-4; 17-7; *see also supra* note 3.

In *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000), the United States Supreme Court rejected a "per se prejudice rule" imposed by a lower court in a case involving facts showing that the petitioner's counsel did not perfect a direct appeal. The court held that to prevail on a claim of ineffective assistance of counsel under those circumstances, the petitioner must "show prejudice," and, do so, "must demonstrate that there is a reasonable probability that, but for

counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Also, at least one district court within the Fourth Circuit has held that a habeas petitioner cannot show prejudice from counsel's failure to perfect a direct appeal where the petitioner is subsequently granted a belated appeal. *See Reed v. Clarke*, No. 2:12CV148, 2012 WL 4754660, at *5 (Sept. 5, 2012), *report and recommendation adopted*, 2012 WL 4747167 (E.D. Va. Oct. 4, 2012).

Despite Petitioner's apparent concession to Respondent's contentions due to his failure to directly address them in his Response to the Motion for Summary Judgment, *see Satcher,* 558 F.3d at 735, the undersigned has considered the merits of this Ground as stated in Petitioner's pro se Petition. Having fully reviewed the record in this case, the undersigned agrees with Respondent that, even if plea counsel were considered ineffective for failing to perfect a direct appeal on Petitioner's behalf following his guilty plea, Petitioner cannot show the requisite prejudice from such ineffectiveness to warrant habeas relief. Petitioner does not allege that he had any particular claim that he has not been able to raise before the state courts or this court because he did not pursue a timely direct appeal. Petitioner was not completely deprived of a direct appeal because the PCR court granted his request for a belated appeal. As noted by the Eastern District of Virginia in the *Reed* case cited above, any prejudice that Petitioner might have suffered from plea counsel's alleged ineffectiveness was cured by his pursuit of the belated appeal both through counsel and through his own pro se brief. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Two.

## IV.     Conclusion

The undersigned has considered each of Petitioner's Grounds for habeas-corpus relief

and recommends that each be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 16, be GRANTED and that the Petition in this case be DISMISSED with prejudice. **Petitioner's attention is directed to the important notice on the following page.**

IT IS SO RECOMMENDED.

December 11, 2015                           Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).